IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| HUK-Coburg-Krankenversicherung AG )<br>Willi-Hussong Str. 2, Coburg, Germany, )<br>subrogee of Markus Ott )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>Garrett M. Keene )<br>104 Hester Ave. )<br>New Smyrna Beach, FL 32168-6016 )<br>)<br>and )<br>)<br>Jung Ran Kim, )<br>4901 Chowan Ave )<br>Alexandria, Virginia 22312-1818 )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. |

## COMPLAINT

NOW COMES PLAINTIFF HUK-Coburg Krankenversicherung AG of Coburg, Germany, as insurer with a contractual right of subrogation on behalf of its insured Markus Ott of Rüsselsheim, Germany, and requests that such Defendants be held jointly and severally liable to Plaintiff, upon the following grounds:

### JURISDICTION AND VENUE

1.      On December 13, 1994, Markus Ott signed a "Antrag auf Auslandsreise-Krankenversicherung" (Application for Health Insurance for Overseas Travel, hereinafter "Application", attached as Exhibit A) with Plaintiff, whose acceptance is indicated on the Application by the assignment of the policy numbers 300/374957-G and 1470194-J.

2.      According to § 11(1) of the Terms and Conditions of the above-mentioned travel health insurance policy (hereinafter "Terms and Conditions", attached as Exhibit B):

> Hat der Versicherungsnehmer oder eine versicherte Person Schadenersatzansprüche nicht versicherungsrechtlicher Art gegen Dritte, so besteht, unbeschadet des gesetzlichen

> Forderungsübergangs gemäß § 67 VVG die Verpflichtung, diese Ansprüche bis zur Höhe, in der aus dem Versicherungsvertrag Kostenersatz geleistet wird, an den Versicherer schriftlich abzutreten.

This provision reads in English as follows:

> If the policy holder or insured person has tort claims against a third party – other than those arising out of insurance law -- he must, irrespective of the statutory subrogation right based on § 67 of the Versicherungsvertraggesetz (Insurance Contract Law), in writing, assign his right to make such claims to the extent of the benefits paid him based on the contract of insurance.

3. Defendant Keene is an adult person with a last known address of 104 Hester Ave., New Smyrna Beach, Florida 32168-6016.

4. Defendant Kim is an adult person with a last known address of 4901 Chowan Ave., Alexandria, Virginia 22312-1818.

5. The amount in controversy exceeds $75,000.

6. Defendants tortiously caused Markus Ott's injuries within the District of Columbia, as shown by a the police report attached as Exhibit "C", and as further stated below. As a result, jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1332 (diversity of citizenship and amount in controversy requirement).

**COUNT 1**
Negligence
(Against Both Defendants)

7. The above-stated paragraphs are incorporated by reference herein.

8. On or about 7:50 pm, May 15, 2003, Markus Ott was lawfully standing on a sidewalk at the southwest corner of the intersection of 14th Street and Madison Drive, when Defendant Kim, who was traveling northbound on 14th St. S.W., disregarded a yellow warning signal, attempted to turn left onto westbound Madison Drive, and struck Defendant Keene who, also disregarding the yellow warning signal, was traveling southbound on 14 St. S.W. and moving into the intersection at great speed. Defendant Kim's vehicle struck Defendant Keene's vehicle with such force that Defendant Keene's vehicle drove over the 14th street curb and onto the sidewalk, striking and injuring Markus Ott. See the police report attached to this Complaint as Exhibit "C."

9. Both Defendant drivers were issued citations by the District of Columbia police for yellow light violations, as indicated in Exhibit "C."

10. Both Defendants had a duty to: (a) operate their vehicles with reasonable care and due regard for the safety of others; (b) maintain control of their vehicles; (c) pay full time attention to their driving; (d) keep a proper lookout; (f) respond to and obey all traffic

signals, and (g) otherwise prevent their vehicles from striking pedestrians who are lawfully on public sidewalks and who have a reasonable expectation of safety from such drivers.

11. The Defendants breached the above-mentioned duties to: (a) operate their vehicles with reasonable care and due regard for the safety of others; (b) maintain control of their vehicles; (c) pay full time attention to their driving; (d) keep a proper lookout; (f) respond to and obey all traffic signals, and (g) otherwise prevent their vehicles from striking pedestrians who are lawfully on public sidewalks and who have a reasonable expectation of safety from such drivers.

12. As a direct and proximate result of the Defendants' breach of the above-stated duties to Mr.Ott, Mr. Ott sustained serious and long-lasting bodily injuries, including numerous broken bones, lung damage, and a partially crippled arm.

13. Markus Ott was transported to George Washington University Hospital and released only after twenty-seven days of treatment there. The total medical and other expenses paid by Plaintiff for Mr. Ott's medical treatment amounted to 140,282.03 Euros, or approximately $181,413 at the exchange rate on May 14, 2006.

WHEREFORE, Plaintiff, as subrogee of Markus Ott, respectfully requests judgment against both Defendants, jointly and severally, to recover all necessary medical and other expenses paid by Plaintiff on Mr. Ott's behalf of at least $181,413, pre- and post-judgment interest, the costs of this litigation, and such other and further relief as this Court may deem appropriate.

This 15th day of May, 2006

Attorney of Record for Plaintiff

Mike Hadeed, Esq. (Bar # 395388)
Miguel Rivera, Esq. (Bar #467189)
Brandon Gladstone, Esq. (Bar # 448477)
BECKER, HADEED, KELLOGG & BERRY, P.C.
5501 Backlick Road, Suite 220
Springfield, Virginia 22151
(703) 256-1300
(703) 256-3467 (fax)

**Krankenversicherungs-Aktiengesellschaft der HUK-Coburg**
Bahnhofsplatz, 96444 Coburg

**Antrag auf Auslandsreise-Krankenversicherung**

- Wichtiger Hinweis für Ihren Versicherungsschutz:
- Der Abschluß ist nur über das Lastschrifteinzugsverfahren möglich.
- Die Kontenangabe ist zur abschließenden Bearbeitung unbedingt erforderlich; Sie genießen sonst keinen Versicherungsschutz.

Die Beiträge sind bis auf Widerruf von dem angegebenen Konto abzubuchen.

300137495+-G

Konto-Nr. 2082733    Bankleitzahl 50352553

Antragsteller

Zu- und Vorname des Antragstellers: Ofk, Markus
Straße, Haus-Nr.: Joachim-uhm 130
PLZ, Wohnort: 65428 Rüsselsheim

Name und Anschrift des Geldinstituts/Filiale: Kreissparkasse Gross-Gerau
Kontoinhaber (sofern nicht Antragsteller):
Unterschrift des Kontoinhabers:

Auslandsreise-Krankenversicherung nach Tarif **RK** für

VM-Nr. 140194-J

Sind oder waren Sie bereits bei der HUK-Coburg versichert?
☐ nein  ☐ ja  Vers.-Nr.:

| | Name, Vorname | Geburtsdatum | Geschl. m/w | Staatsangeh. |
|---|---|---|---|---|
| 1 | Ofk, Markus | 07.03.70 | m | D |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

Jahresbeitr. pro Pers. DM / Pf: 140
Per-sonen: x 1
Gesamtbeitrag DM / Pf: = 140
Versicherungsbeginn Tag Monat Jahr: 07 07 95

Vertragsdauer: Der Vertrag wird für die Dauer eines Jahres abgeschlossen und verlängert sich dann jeweils um ein weiteres Jahr, wenn er nicht einen Monat vor Ablauf schriftlich gekündigt wird. Hierfür werden die Beiträge bis auf weiteres im Lastschrifteinzugsverfahren von vorgenanntem Konto eingezogen.

* Frühestens Datum des Poststempels oder Eingangsdatum bei persönlicher Einreichung des Antrags.
Die nachstehende Schweigepflichtentbindungserklärung und Datenschutzerklärung erkenne ich an.

Ort, Datum: Rü, 13.12.94

Unterschrift des Antragstellers


PLAINTIFF'S EXHIBIT A

GESAMT SEITEN 02

# Allgemeine Versicherungsbedingungen (AVB) für die Auslandsreise-Krankenversicherung

## Tarif RK

### § 1 Gegenstand, Umfang und Geltungsbereich des Versicherungsschutzes

(1) Der Versicherer bietet Versicherungsschutz für Krankheiten, Unfälle und andere im Vertrag genannte Ereignisse. Er gewährt bei einem im Ausland unvorhergesehen eintretenden Versicherungsfall Ersatz von Aufwendungen für Heilbehandlung und sonst vereinbarte Leistungen.

(2) Versicherungsfall ist die medizinisch notwendige Heilbehandlung einer versicherten Person wegen einer auf der Reise akut auftretenden Krankheit, deren akuter Verschlechterung oder akuter Folgen eines Unfalls. Der Versicherungsfall beginnt mit der Heilbehandlung; er endet, wenn nach medizinischem Befund Behandlungsbedürftigkeit nicht mehr besteht.
Muss die Heilbehandlung auf eine Krankheit oder Unfallfolge ausgedehnt werden, die mit der bisher behandelten ursächlich zusammenhängt, so entsteht insoweit ein neuer Versicherungsfall. Als Versicherungsfall gilt auch der Tod.

(3) Der Umfang des Versicherungsschutzes ergibt sich aus der Versicherungsbestätigung, dem Antrag, besonderen schriftlichen Vereinbarungen, den Allgemeinen Versicherungsbedingungen sowie den in Deutschland gültigen gesetzlichen Vorschriften.

(4) Als Ausland im Sinne dieser Bedingungen gilt nicht das Staatsgebiet der Bundesrepublik Deutschland, Satz 2 entfällt.

(5) Der Versicherungsschutz besteht für alle vorübergehenden Auslandsreisen, die von der versicherten Person innerhalb eines Versicherungsjahres angetreten werden. Die Dauer des Auslandsaufenthalts darf dabei jedoch einen Zeitraum von 42 Tagen nicht überschreiten. Bei einem Auslandsaufenthalt über einen Zeitraum von 42 Tagen hinaus besteht Leistungspflicht nur für die ersten 42 Tage des Auslandsaufenthalts.
Endet das Versicherungsjahr während des Auslandsaufenthalts, besteht der Versicherungsschutz nur fort, wenn der Vertrag nicht gekündigt ist. § 7 Abs. 2 gilt entsprechend.
Beginn und Ende einer jeden Auslandsreise sind vom Versicherungsnehmer auf Verlangen des Versicherers im Leistungsfall nachzuweisen.

(6) Aufnahmefähig sind Personen bis zum vollendeten 70. Lebensjahr mit ständigem Wohnsitz in der Bundesrepublik Deutschland.

### § 2 Beginn des Versicherungsschutzes

(1) Der Versicherungsschutz beginnt mit dem vereinbarten Zeitpunkt (Versicherungsbeginn), jedoch nicht vor Abschluss des Versicherungsvertrags, nicht vor Zahlung des Beitrags und nicht vor Grenzüberschreitungen ins Ausland.

(2) Für Versicherungsfälle, die vor Beginn des Versicherungsschutzes eingetreten sind, wird nicht geleistet.

### § 3 Abschluss und Dauer des Versicherungsvertrags

(1) Der Versicherungsvertrag wird vor Antritt der Reise für die Dauer eines Jahres abgeschlossen. Er verlängert sich stillschweigend jeweils um ein weiteres Jahr, wenn nicht durch den Versicherungsnehmer bzw. durch den Versicherer zum Ende eines jeden Versicherungsjahres mit einer Frist von einem Monat schriftlich gekündigt wird. Die Kündigung kann auf einzelne versicherte Personen beschränkt werden.

(2) Das Versicherungsjahr beginnt mit dem in der Versicherungsbestätigung bezeichneten Zeitpunkt und endet nach einem Jahr.

(3) Der Versicherungsvertrag kommt mit der Annahme des Antrags bzw. der Aushändigung des Versicherungsscheines zustande.

(4) Wird die Versicherung auf dem von dem Versicherer hierfür vorgesehenen und gültigen Einzahlungsvordruck beantragt und erfolgt die Beitragszahlung über ein Postamt oder über ein Kreditinstitut, so gilt der Vertrag, vorbehaltlich des Eingangs des ordnungsgemäß ausgefüllten Antrags (Einzahlungsvordruck) beim Versicherer, bereits mit dem Tag der Einzahlung des Beitrags (Datum des Poststempels bzw. des Kreditinstituts ist maßgebend) bzw. mit Eingangsdatum bei persönlicher Einreichung des Antrags als zu Stande gekommen. Als Versicherungsnehmer gilt der Antragsteller bzw. der im Einzahlungsvordruck angegebene Einzahler.

(5) Der Versicherungsvertrag endet mit dem Tod des Versicherungsnehmers. Die versicherten Personen haben jedoch das Recht, den Versicherungsvertrag unter Benennung des künftigen Versicherungsnehmers fortzusetzen. Die Erklärung ist innerhalb zweier Monate nach dem Tod des Versicherungsnehmers anzugeben. Beim Tod einer versicherten Person endet insoweit der Versicherungsvertrag.

(6) Der Versicherungsvertrag endet mit dem Wegzug des Versicherungsnehmers aus dem Tätigkeitsgebiet des Versicherers, es sei denn, dass eine anderweitige Vereinbarung getroffen wird. Bei Wegzug einer versicherten Person endet insoweit der Versicherungsvertrag.

### § 4 Umfang der Leistungspflicht

(1) Der versicherten Person steht die Wahl unter den im Aufenthaltsland zur Heilbehandlung zugelassenen Ärzten und Zahnärzten frei.

(2) Arznei-, Verband- und Heilmittel müssen von den in Absatz 1 genannten Behandlern verordnet, Arzneimittel zudem aus einer Apotheke bezogen werden.

(3) Bei medizinisch notwendiger stationärer Heilbehandlung hat die versicherte Person freie Wahl unter den Krankenhäusern, die unter ständiger ärztlicher Leitung stehen, über ausreichende diagnostische und therapeutische Möglichkeiten verfügen, nach Methoden arbeiten, die in der Bundesrepublik Deutschland oder im Aufenthaltsland wissenschaftlich allgemein anerkannt sind und Krankengeschichten führen.

(4) Erstattungsfähig sind
1. medizinisch notwendige Aufwendungen für
   a) ambulante ärztliche Heilbehandlung einschließlich Röntgendiagnostik,
   b) Arznei-, Heil- und Verbandmittel auf Grund ärztlicher Verordnung außer Massagen, Bäder und medizinische Packungen. Als Arzneimittel, auch wenn sie ärztlich verordnet sind und heilwirksame Stoffe enthalten, gelten nicht Nähr- und Stärkungspräparate, kosmetische Präparate sowie Mittel, die vorbeugend oder gewohnheitsmäßig genommen werden;
   c) schmerzstillende Zahnbehandlung und notwendige Zahnfüllungen in einfacher Ausführung sowie Reparaturen von Zahnersatz, nicht aber Neuanfertigung, Kronen und Kieferorthopädie;
   d) stationäre Heilbehandlung einschließlich Operationen und Operations-Nebenkosten, sofern diese in einem Aufenthaltsland allgemein anerkannten Krankenhaus erfolgt;
   e) den notwendigen Transport zur stationären Behandlung in das nächsterreichbare geeignete Krankenhaus oder zum nächsterreichbaren Notfallarzt durch anerkannte Rettungsdienste.
2. Mehraufwendungen
   a) für den medizinisch notwendigen und ärztlich verordneten Rücktransport des Versicherten vom ständigen Wohnsitz in der Bundesrepublik Deutschland oder in das diesem Wohnsitz nächstgelegene Krankenhaus;
   b) die Überführung bei Tod einer versicherten Person bis zu 5.113 Euro Versicherungsleistung;
   c) für die Bestattung einer versicherten Person im Ausland bis zur Höhe der Versicherungsleistung, die bei einer Überführung zu erbringen gewesen wäre.

Die Aufwendungen zu 1. und 2. werden mit 100 % der erstattungsfähigen Rechnungsbeträge erstattet.

### § 5 Einschränkung der Leistungspflicht

(1) Keine Leistungspflicht besteht für
a) Krankheiten und Unfallfolgen, deren Heilbehandlung im Ausland alleiniger Grund oder einer der Gründe für den Antritt der Reise war;
b) Behandlungen, von denen bei Reiseantritt feststand, dass sie bei planmäßiger Durchführung der Reise stattfinden mussten, es sei denn, dass die Reise wegen des Todes des Ehegatten oder eines Verwandten ersten Grades unternommen wurde;
c) Krankheiten und deren Folgen sowie Folgen von Unfällen und Todesfälle, die durch Kriegsereignisse oder Teilnahme an inneren Unruhen verursacht worden sind;
d) auf Vorsatz beruhende Krankheiten und Unfälle einschließlich deren Folgen sowie Entgiftungs-, Entzugs- und Entwöhnungsbehandlungen;
e) Behandlungen geistiger und seelischer Störungen und Erkrankungen sowie Hypnose und Psychotherapie;
f) entfällt
g) Zahnersatz einschließlich Kronen und für Kieferorthopädie;
h) Hilfsmittel;
i) Kur- und Sanatoriumsbehandlung sowie für Rehabilitationsmaßnahmen
j) ambulante Heilbehandlung in einem Heilbad oder Kurort. Die Einschränkung entfällt, wenn während eines vorübergehenden Aufenthalts durch eine vom Aufenthaltszweck unabhängige Erkrankung oder einen dort eingetretenen Unfall Heilbehandlung notwendig wird;
k) Untersuchungs- und Behandlungsmethoden und Arzneimittel, die wissenschaftlich nicht allgemein anerkannt sind. Dabei sind die Verhältnisse im jeweiligen Aufenthaltsland maßgebend;
l) Behandlung durch Ehegatten, Eltern oder Kinder. Sachaufwendungen werden erstattet;
m) eine durch Pflegebedürftigkeit oder Verwahrung bedingte Unterbringung.

(2) Übersteigt eine Heilbehandlung oder sonstige Maßnahme, für die Leistungen vereinbart sind, das medizinisch notwendige Maß oder ist die erforderliche Vergütung für die Verhältnisse des Reiselands nicht angemessen, so kann der Versicherer seine Leistungen auf einen angemessenen Betrag herabsetzen.

(3) Besteht Anspruch auf Leistungen aus der gesetzlichen Unfall- oder Rentenversicherung, auf eine gesetzliche Heilfürsorge oder Unfallfürsorge, so ist der Versicherer nur für die Aufwendungen leistungspflichtig, welche trotz deren Leistungen notwendig bleiben.



PLAINTIFF'S EXHIBIT B

### § 6 Auszahlung der Versicherungsleistungen

(1) Der Versicherer ist zur Leistung nur verpflichtet, wenn die Rechnungsurschriften vorgelegt und die erforderlichen Nachweise erbracht sind; diese werden Eigentum des Versicherers. Wurden die Original-Belege einem anderen Versicherer (z. B. den in § 5 Abs. 3 genannten) zur Erstattung vorgelegt, so genügen Rechnungszweitschriften, wenn darauf der andere Versicherer seine Leistungen vermerkt hat.

(2) Alle Belege müssen den Namen des Behandlers, den Vor- und Zunamen und das Geburtsdatum der behandelten Person sowie die Krankheitsbezeichnung und die einzelnen ärztlichen Leistungen mit Behandlungsdaten enthalten; aus den Rezepten müssen die verordneten Arzneimittel, der Preis und der Quittungsvermerk deutlich hervorgehen. Bei Zahnbehandlung müssen die Belege die Bezeichnung der behandelten Zähne und der daran vorgenommenen Behandlung tragen. Leistungen oder deren Ablehnung durch die in § 5 Abs. 3 genannten Versicherungsträger sind nachzuweisen.

(3) Zum Nachweis eines medizinisch notwendigen Rücktransports ist eine ärztliche Bescheinigung über die medizinische Notwendigkeit einzureichen.

(4) Bei der Geltendmachung von Überführungs- bzw. Bestattungskosten ist eine amtliche oder ärztliche Bescheinigung über die Todesursache einzureichen.

(5) Der Versicherer ist berechtigt, an den Überbringer oder Übersender von ordnungsgemäßen Nachweisen zu leisten, es sei denn, dem Versicherer sind begründete Zweifel an der Legitimation des Überbringers oder Übersenders bekannt.

(6) Die in ausländischer Währung entstandenen Kosten werden zum Kurs des Tages, an dem die Belege bei dem Versicherer eingehen, in Euro umgerechnet. Als Kurs des Tages gilt für gehandelte Währungen der amtliche Devisenkurs, Frankfurt, für nicht gehandelte Währungen der Kurs gemäß "Währungen der Welt", Veröffentlichungen der Deutschen Bundesbank, Frankfurt, nach jeweils neuestem Stand, es sei denn, dass die zur Bezahlung der Rechnungen notwendigen Devisen nachweislich zu einem ungünstigeren Kurs erworben wurden und dies durch eine Änderung der Währungsparitäten bedingt war.

(7) Kosten für die Überweisung der Versicherungsleistungen - mit Ausnahme einer Überweisung auf ein inländisches Konto - können von den Leistungen abgezogen werden.

(8) Ansprüche auf Versicherungsleistungen können weder abgetreten noch verpfändet werden.

### § 7 Ende des Versicherungsschutzes

(1) Der Versicherungsschutz endet - auch für schwebende Versicherungsfälle - mit Beendigung des Auslandsaufenthalts bzw. des Versicherungsverhältnisses. Der Versicherungsschutz endet darüber hinaus mit dem Ablauf der ersten 42 Tage eines Auslandsaufenthalts.

(2) Die Leistungspflicht für entschädigungspflichtige Versicherungsfälle verlängert sich über den vereinbarten Zeitraum hinaus, solange die Rückreise aus medizinischen Gründen nicht möglich ist.

### § 8 Beitragszahlung

Der Beitrag gilt für ein Versicherungsjahr und ist bei Abschluss des Versicherungsvertrages, der jeweilige Folgebetrag zu Beginn eines jeden Verlängerungsjahres, zuzahlen. Er beträgt je versicherte Person 7,36 Euro. Nach Vollendung des 70. Lebensjahres beträgt der Beitrag 14,73 Euro.

### § 9 Obliegenheiten

(1) Der Versicherungsnehmer hat sämtliche Belege im Original spätestens bis zum Ablauf des dritten Monats nach Beendigung der Reise einzureichen.

(2) Der Versicherungsnehmer hat auf Verlangen des Versicherers jede Auskunft zu erteilen, die zur Festlegung des Versicherungsfalls oder der Leistungspflicht des Versicherers und ihres Umfanges erforderlich ist.

(3) Auf Verlangen des Versicherers ist die versicherte Person verpflichtet, sich durch einen vom Versicherer beauftragten Arzt untersuchen zu lassen.

(4) Der Versicherungsnehmer bzw. die versicherten Personen sind auf Verlangen des Versicherers verpflichtet, dem Versicherer die Einholung von erforderlichen Auskünften zu ermöglichen. Hierzu ist der Versicherer zu ermächtigen, jederzeit Auskünfte über frühere, bestehende und bis zum Ende des Vertrags eintretende Krankheiten, Unfallfolgen und Gebrechen sowie über beantragte, bestehende und beendete Personenversicherungen einzuholen. Dazu darf der Versicherer Ärzte, Zahnärzte, Heilpraktiker, Krankenanstalten aller Art, Versicherungsträger, Gesundheits- und Versorgungsämter befragen. Diese sind von ihrer Schweigepflicht zu befreien und zu ermächtigen, dem Versicherer alle erforderlichen Auskünfte zu erteilen.

### § 10 Folgen von Obliegenheitsverletzungen

Der Versicherer ist mit der in § 6 Abs. 3 VVG vorgeschriebenen Einschränkung von der Verpflichtung zur Leistung frei, wenn eine der in § 9 genannten Obliegenheiten verletzt wird. Die Kenntnis und das Verschulden der versicherten Personen stehen der Kenntnis und dem Verschulden des Versicherungsnehmers gleich.

### § 11 Ansprüche gegen Dritte

(1) Hat der Versicherungsnehmer oder eine versicherte Person Schadenersatzansprüche nicht versicherungsrechtlicher Art gegen Dritte, so besteht, unbeschadet des gesetzlichen Forderungsübergangs gemäß § 67 VVG die Verpflichtung, diese Ansprüche bis zur Höhe, in der aus dem Versicherungsvertrag Kostenersatz geleistet wird, an den Versicherer schriftlich abzutreten. Gibt der Versicherungsnehmer oder eine versicherte Person einen solchen Anspruch oder ein zur Sicherung dieses Anspruchs dienendes Recht ohne Zustimmung des Versicherers auf, so wird dieser insoweit von der Verpflichtung zur Leistung frei, als er aus dem Anspruch oder dem Recht hätte Ersatz verlangen können.

(2) Soweit der Versicherte von schadenersatzpflichtigen Dritten Ersatz der ihm entstandenen Aufwendungen erhalten hat, ist der Versicherer berechtigt den Ersatz auf seine Leistungen anzurechnen.

### § 12 Aufrechnung

Der Versicherungsnehmer kann gegen Forderungen des Versicherers nur aufrechnen, soweit die Gegenforderung unbestritten oder rechtskräftig festgestellt ist.

### § 13 Willenserklärungen und Anzeigen

Willenserklärungen und Anzeigen gegenüber dem Versicherer bedürfen grundsätzlich der Schriftform.

### § 14 Änderungen der Allgemeinen Versicherungsbedingungen einschließlich des Versicherungsbeitrags

Die Allgemeinen Versicherungsbedingungen einschließlich des Versicherungsbeitrags können vom Versicherer nur zum Beginn eines neuen Versicherungsjahres geändert werden. Die Änderung muss dem Versicherungsnehmer mit einer Frist von einem Monat zum Ende des alten Versicherungsjahres schriftlich mitgeteilt werden. Der Versicherungsnehmer kann den Versicherungsvertrag innerhalb eines Monats nach Zugang der Mitteilung, zu dem Zeitpunkt kündigen, in dem die Änderung wirksam werden sollte.

# TRAFFIC ACCIDENT REPORT
Metropolitan Police Department, Washington, D.C.

PD 10 Rev. 7/85  Prescribing Directive G.O 401.3

| 1. DATE OF ACCIDENT | 2. TIME (USE MILITARY) | 3. DAY OF WEEK | 4. DATE OF THIS REPORT | TYPE OF ACCIDENT | | | | | CCN |
|---|---|---|---|---|---|---|---|---|---|
| 5-15-03 | 1950 | Thurs | 5-15-03 | FATALITY | ☒ INJURY | D.C. PROPERTY DAM | HIT AND RUN | ☒ PEDESTRIAN / NONCOLLISION | 065148 |

7. ACCIDENT OCCURRED ON (STREET, DIRECTION, DISTANCE FROM MILE POST, RAMP)
14th st. at Madison drive S.W.

| 8. DISTRICT | 9. NO. VEHICLES INVOL. | 10. NO. INJURED PERSONS |
|---|---|---|
| 1-D 107 | 2 | 1 |

Veh. 1 / 1 / 00 / 00

From Madison dr. on 14th st. SW

### 1. (Striking Object / Driver / Pedestrian / Fixed Object)
Keene, Garrett Merrill    SEX: M    DOB: 9-17-65
ADDRESS: 1512 Springvale ave., McLean VA. 22101
HOME PHONE: 703-354-1790    PERMIT: 225212118 / V.A.    BUS. PHONE: 703-256-5000
MODEL: Dodg  YEAR: 02  BODY: 4dr  COLOR: Yellow  TAG: YGU 984 VA 04  VIN: 1B3AS56120599237
OWNER: Driver

### 3. 
OTT, Marcus    SEX: M    DOB: 3-3-70
UNKNOWN

### 2.
Kim, Jung Ran    SEX: M    DOB: 2-18-79
ADDRESS: 4901 Chowan ave. Alexandria VA. 22312
HOME PHONE: 703-505-4666    PERMIT: P620456323128 / VA    BUS. PHONE: 202-213-0008
MODEL: Alt  MAKE: Niss  YEAR: 01  BODY: 4dr  COLOR: Grey  TAG: KNY295 MD 04  VIN: 1N4DL01D2K132318
OWNER: Driver

### 4.
(blank)

### PERSONS INVOLVED
| Name | Age | Sex | Pass.in veh.no. | Code | Belt | Bag | Cond |
|---|---|---|---|---|---|---|---|
| D-1 (Keene) | 38 | M | 1 | 01 04 00 | 01 | | |
| D-2 (Kim) | 23 | M | 2 | 01 04 00 | 01 | | |
| Ped-1 (OTT) | 33 | M | Ped | 10 00 00 | 00 01 | | |

PLAINTIFF'S EXHIBIT C

| Name of Injured Person | Where Taken (Hospital) | By Whom | Status | TFD Notified (Name) | Teletype Notified (Name) | |
|---|---|---|---|---|---|---|
| OTT, Marcus | GW Hospital | DC Fire | Admitted / ☒ Released | | | |
| | | | Admitted / Released | | | |
| | | | Admitted / Released | | | |
| | | | Admitted / Released | | | |
| | | | Admitted / Released | | | |
| | | | Admitted / Released | | | |
| | | | Admitted / Released | | | |

**VEHICLE NO. 1**
- Direction of Travel and Street: S bound 14th St. SW
- Vehicle was: Towed by
- Name: Able Towing
- Location towed to: Dealership Alexandria, VA.
- Damage: 13 Hood circled
- Skid marks: To impact 0, After impact 0

**VEHICLE NO. 2**
- Direction of Travel and Street: N bound 14th St. SW
- Vehicle was: Towed by
- Name: Able Towing
- Location towed to: 1401 Chapman Ave Alexandria VA
- Damage: circled 2,3,4,5,6,12,11,10
- Skid marks: To impact 0, After impact 2

**VEHICLE NO. 3** (blank)

**VEHICLE NO. 4** (blank)

Diagram notes: Madison dr., Pedestrian, 25 mph, 14th St SW, V-1, V-2

Complaint No. 065 148

NOTE: This report is used for statistical analysis of vehicular accidents and the prevention thereof. The data given represents the opinions and conclusions of the reporting officer based on his/her judgement after considering all of the facts disclosed through his/her investigation of this accident.

Complaint No. 065148

| Dr./Ped. | Arrest/NOI Number | Charge (Report must support the charge.) | GA/SUPERIOR COURT HEARING DATE | DPW 40-1 Issued? | What Traffic Signs Present? |
|---|---|---|---|---|---|
| No. 1 | 986555942 | Yellow light violation | Pending | No | Signal |
| No. 2 | 986555953 | Yellow light violation | Pending | No | Signal |

NARRATIVE:

D-1 states that while traveling S.bound on 14th st. SW at Madison dr. SW he collided with D-2's vehicle which caused his vehicle to run up on the curb and strike Ped-1. D-2 states he was trying to clear the intersection of 14th & Madison dr. SW by turning W.bound onto Madison dr. SW from the N.bound lane of 14th st. SW when his vehicle collided with D-1's vehicle causing it to strike Ped-1. Both drivers were issued NOI's for Yellow light violation. No information was available from Ped-1.

SIGNATURE OF REPORTING OFFICER: Vikitalis, N.   BADGE NO. 581   UNIT 1-D
SIGNATURE OF REVIEWING OFFICIAL: [signature]   BADGE NO. 544   UNIT 1D

**CONTINUATION SHEET** *(List item number of section continued with required information.)*  ▶ Complaint No. 065198